```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION
```

| | |
|---|---|
| GUY STONE, ANNA STONE, GAYL GORHAM, GARY STONE, JOYCE STONE, WENDY KASSEL, and THOMAS KASSEL,<br><br>        Plaintiffs,<br><br>        v.<br><br>CHICAGO INVESTMENT GROUP, LLC, and ALAN BIRKLEY,<br><br>        Defendants. | Case No. 11 C 51<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Alan Birkley's (hereinafter, "Birkley") Motion to Dismiss the securities fraud complaint brought by Guy Stone, Anna Stone, Gayl Gorham, Gary Stone, Joyce Stone, Wendy Kassel and Thomas Kassel (collectively, the "Plaintiffs"). For the following reasons, the Motion is granted in part and denied in part. Count II is dismissed, but the remainder of the Complaint stands.

### I. BACKGROUND

Plaintiffs brought a six-count Complaint against Birkley and Chicago Investment Group, LLC alleging: (1) a violation of Securities and Exchange Commission Rule 10b-5; (2) a violation of the Illinois Securities Law, 815 Ill. Comp. Stat. 5/12; (3) a violation of the Illinois Consumer Fraud and Deceptive Practices Act (the "ICFDPA"), 815 Ill. Comp. Stat. 505; (4) intentional

misrepresentation; (5) negligent misrepresentation; and (6) breach of fiduciary duty. Their Complaint was filed on January 4, 2011. Plaintiffs assert that they attempted service immediately, but a summons was not issued as to Birkley until August 24, 2011, and he was not served until September 6, 2011. Plaintiffs have not yet obtained service on Chicago Investment Group.

The following facts are taken from Plaintiffs' Complaint and will be accepted as true for the purposes of this motion. In April 2006, Birkley, a broker at Chicago Investment Group, met with Plaintiffs and encouraged them to invest in Western Springs One LLC, and Dartmoor Homes, Inc. (collectively, "Dartmoor"). Birkley encouraged Plaintiffs to invest in the property through investment promissory notes (the "Notes"), and told them this was a risk-free investment. Birkley told Plaintiffs the Notes would provide a return on investment at a rate of 15 percent and that he had invested in the same Notes due to the past performance of similar Dartmoor Notes. He did not provide a prospectus or any other written information about the Notes. Plaintiffs accepted his assurances and invested in Dartmoor.

In April and May 2006, Birkley executed the Notes for the Plaintiffs in varying amounts. (The relationship between the parties in not made clear in the Complaint, but separate notes were issued to Guy and Anna Stone, Wayne and Gayl Gorham, Gary and Joyce Stone, and Wendy and Thomas Kassel.) The Notes were payable in October 2007,

but when Plaintiffs attempted to redeem them, Birkley told them they could not be redeemed at that time. Instead, Birkley offered new, risk-free notes that would mature on December 31, 2008. The original notes were "replaced" for all the Plaintiffs except Guy and Anna Stone.

Although the Complaint is not entirely clear, it appears that even after the Notes were replaced, Birkley continued to reassure the Plaintiffs that payment on the original Notes could be made by the end of 2007. Pls.' Compl. ¶ 16-17. At any rate, Dartmoor did not pay on the Notes in either when they originally were due or in December 2008.

In March 2009, Plaintiffs met with Birkley, and he told them the Notes would be paid soon. Over the course of 2009, Plaintiffs telephoned Birkley six to ten times to demand payment. Birkley told them the Notes would be paid soon. In the late spring of 2009, Thomas Kassel asked Birkley whether Plaintiffs could obtain security for the Notes, and he assured Kassel that the investment was safe. In or about August 2009, Thomas Kassel met with Birkley and officials from Dartmoor Homes, Inc. Birkley told him Plaintiffs would be paid back in about two months. They were not paid, and this suit followed.

Birkley moves to dismiss on the grounds that: (1) Plaintiffs were on "inquiry notice" of potential fraud more than two years before the January 4, 2011, filing date, making the securities fraud

claims untimely; (2) Plaintiffs failed to comply with Illinois law regarding notice of rescission; and (3) Plaintiffs failed to comply with service requirements.

## II. ANALYSIS

### A. Legal Standard

The question in deciding a motion to dismiss is whether the well-pleaded facts, taken as true, state a claim upon which relief can be granted. *Gen. Elec. Cap. Corp. v. Lease Resolution*, 128 F.3d 1074, 1080 (7th Cir. 1997). The statute of limitations is an affirmative defense that Plaintiffs need not anticipate in their complaint. *Brooks v. Ross,* 578 F.3d 574, 579 (7th Cir. 2009). However, the Court may dismiss the Complaint if the expiration of a statute of limitations is clear from its face. *Id.*

### B. Relevant Statutes of Limitation

A claim for a Rule 10b-5 violation, such as the one Plaintiffs bring in Count I of their Complaint, must be brought "not later than the earlier of: (1) two years after the discovery of the facts constituting the violation; or (2) five years after the violation." 28 U.S.C. § 1658(b)(1)(2). For the purposes of this opinion, the Court will refer to this statute as a statute of limitations. Although the Seventh Circuit has indicated that both subsections are actually statutes of repose, the distinction is not relevant to deciding the issues presented in this motion. *See McCann v. Hy-Vee, Inc.*, ___ F.3d ___, 2011 WL 5924414, at *5 (7th Cir. Sept. 22, 2011).

Until recently, the Seventh Circuit held that the statute of limitations for federal securities fraud claims incorporates the doctrine of inquiry notice. *Fujisawa Pharm. Co., Ltd. v. Kapoor*, 115 F.3d 1332, 1334 (7th Cir. 1997). This meant that the two-year period began to run not when the fraud occurred or when it was discovered, but rather when "the plaintiff learn[ed], or should have learned through the exercise of ordinary diligence in the protection of one's legal rights, enough facts to enable him by such further investigation as the facts would induce in a reasonable person to sue within a year." *Id*. Although what constitutes inquiry notice is not clear-cut, Plaintiffs are typically put on notice when there are "storm warnings" that would alert reasonable investigators to the possibility of fraudulent statements or omissions in their securities transaction. *Tregenza v. Great Am. Commc'ns Co.*, 823 F.Supp. 1409, 1415 (N.D. Ill. 1993).

However, although neither party mentions it, the inquiry notice analysis was overruled by the U.S. Supreme Court in *Merck & Co. v. Reynolds*, 130 S.Ct. 1784, 1798 (2010); *see McCann,* 2011 WL 5924414, at *2. The high court in *Merck* held that a federal securities fraud claim accrues when the litigant knows, or with due diligence should know, the facts underlying the alleged violation. *Merck*, 130 S.Ct. at 1794. The Court noted that the discovery of facts that put a plaintiff on inquiry notice does not automatically trigger the running of the limitations period. *Id*. at 1798. Instead, the clock

starts to run when a reasonably diligent plaintiff would have discovered the facts constituting the violation, including scienter. *Id.* The Second Circuit has interpreted this to mean that "the limitations period commences not when a reasonable investor would have begun investigating, but when a reasonable investor conducting a timely investigation would have uncovered the facts constituting a violation." *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA*, Inc., 637 F.3d 169, 174 (2d Cir. 2011).

The remainder of Plaintiffs' Complaint is made up of state law claims. In Count II, Plaintiffs bring a claim under the Illinois Securities Law, which has a three-year statute of limitations from the date of sale of the securities. 815 Ill. Comp. Stat. 5/13D(1)-(2). In instances of alleged fraud, however, that three-year period does not begin to run until the party has, at least, notice of facts that in the exercise of reasonable diligence would lead to knowledge that the Act had been violated. 815 Ill. Comp. Stat. 5/13D(1)-(2). The statue also has a five-year statute of repose, meaning that no claim can be brought more than five years after the sale of securities. *Id.*

The language of the statute indicates that the three-year period begins to run when the plaintiff is on inquiry notice, and courts within this district have interpreted it as such. *See, e.g., Grumhaus v. Comerica Secs., Inc.*, No. 99 C 1776, 2003 WL 21504185, at *2 (N.D. Ill. June 30, 2003); *Ferguson v. Lurie*, No. 89 C 2283, 1994

WL 71480, at *2 (N.D. Ill. March 4, 1994). It is not clear how Illinois Courts will interpret this provision in light of *Merck*, but the Court notes that both parties agree that an inquiry notice standard applies to the state law claim. Even if such a standard is too stringent, it does not change the outcome of this case.

Plaintiffs also bring a claim under the ICFDPA and state common-law claims. It is clear that the common-law claims are governed by the Illinois Securities Law's three-year statute of limitations because the claims are reliant "upon matters for which relief is granted" by that statute. *Tregenza v. Lehman Brothers*, Inc., 678 N.E.2d 14, 15 (Ill. App. Ct. 1997) (citing 815 Ill. Comp. 5/13D)). The parties seem to assume that the Securities Law's three-year statute of limitations applies to the statutory ICFDPA claim as well. Ultimately, it matters little, given that the ICFDPA also has a three-year statute of limitations and the Court finds that the securities claims are timely.

### C. Timeliness

#### *1. Federal Claim*

As noted, both parties address the federal securities fraud violation only in the context of the now-overruled inquiry notice standard. Birkley's argument, essentially, is that when the Notes went unpaid in late 2007, this was enough to trigger an investigation into possible fraud and start the running of the statute of limitations. Plaintiffs argue that they were not on inquiry notice

until, at the earliest, March 2009, when Plaintiffs made numerous phone calls to Birkley demanding payment on the Notes.

Applying the *Merck* standard, as this Court must, leads to the conclusion that Plaintiffs' federal securities fraud claim is timely. The Court in *Merck* noted that although the concept of inquiry notice remains relevant because it identifies when a reasonably diligent plaintiff should have begun investigating, the limitations period does not begin to run until a reasonably diligent plaintiff actually would have discovered the facts constituting the violation. *Merck*, 130 S.Ct. at 1789.

There is nothing in the facts, as pleaded, to show that Plaintiffs should have discovered the alleged fraud more than two years prior to the date of filing this suit. *See Antelis v. Freeman*, ___ F.Supp.2d ___, 2011 WL 2582338, at *4 (N.D. Ill. June 29, 2011). Although the fact that Dartmoor did not pay the Notes at the end of 2007 might have been a cause for concern, Birkley allegedly assuaged those concerns when he offered new Notes payable in December 2008. The Court notes that Birkley does not address whether the analysis should differ as to Guy and Anna Stone, for whom new Notes were not issued. As such, the Court will not perform a separate analysis as to their claims. *See Smith v. United Res. Servs. & Real Estate, Inc.*, No. 10 C 5440, 2011 WL 3047492, at *3 n.5 (N.D. Ill. July 25, 2011) ("It is not the job of the court to formulate and develop arguments for the parties.").

Even when applying an inquiry notice standard, the Seventh Circuit has cautioned that the key issue is when an inference of probable misrepresentation arose. *See LaSalle v. Medco Research, Inc.*, 54 F.3d 443, 446 (7th Cir. 1995). More is required than merely an investment loss, because such losses usually occur without fraud of any kind. *Id.* (citing *Eckstein v. Balcor Film Investors,* 8 F.3d 1121, 1128 (7th Cir. 1993)).

In *Merck*, the Court did not provide a full listing of the facts that the plaintiff must discover (or that a reasonably diligent plaintiff would have discovered) in order to start the running of the statute. *See, Merck*, 130 S.Ct. at 1796. However, the Court emphasized that the fact of scienter, meaning that the defendant acted with intent to deceive, is one of those key facts. *Id.* Further, the Court in *Merck* rejected the argument that facts that tend to show a materially false or misleading statement are automatically sufficient to show scienter as well. *Id.* The Court reasoned that "[a]n incorrect prediction about a firm's future earnings, by itself, does not automatically tell us whether the speaker deliberately lied or just made an innocent (and therefore non-actionable) error." *Id.* at 1797. So the mere fact that Plaintiffs knew by late 2007 that Birkley's statement that the Notes would provide a 15 percent of return that year was incorrect does not show that they had discovered facts sufficient to establish a securities violation. Obviously, the failure to pay on the New Notes

- 9 -

in December 2008 would have been an additional cause for concern. But Plaintiffs have not pleaded facts to show that a reasonably diligent investor would have discovered the facts underlying the alleged violation by January of 2009, so the federal securities fraud claim is timely.

### *2. State Law Claims*

As noted, the parties agree that Plaintiffs' state law securities claim begins to run when the Plaintiffs had inquiry notice of the conduct giving rise to the claim. What that means for the purposes of this case is that the state securities claim (and the state common-law claims related to it) would be barred if the Plaintiffs were on inquiry notice by January 2008.

Birkley likens the instant case to *Tregenza*, 823 F.Supp. at 1415, in which the court, ruling on summary judgment, found that the plaintiffs should have been on notice of fraud because a precipitous drop in the price of defendant's stock. There, plaintiffs sued a broker and a corporation that offered stock at a price of $12.00 a share in October 1989. *Id.* at 1412. The defendants allegedly told investors that the stock was greatly undervalued at that price and that the risk of investing was minimal. *Id.* By October of the following year, the stock price had dropped to about $2.00. *Id.* at 1415. This slide should have given investors a warning that the initial representations about the prospects of the stock were fraudulent, the court held. *Id.* at 1416–17. Because plaintiffs

filed their complaint more than a year — then the applicable limitations period — after this precipitous drop in the stock price, it was barred. *Id.* at 1417. Relying on *Tregenza*, Birkley argues that it was unreasonable for Plaintiffs to rely on his repeated assurances that the Notes would be paid rather than filing suit shortly after Dartmoor initially failed to pay the Notes. *See id*. at 1415 n.6 (noting that it would have been "neither prudent nor diligent" for investors to rely on the representations of a broker they suspected of having misrepresented the value of stock).

In attempting to draw a parallel between this case and *Tregenza*, Birkley argues that there is no difference between the suspicions raised by a drop in stock price and the suspicions raised when payment on a note is not made as promised. Def.'s Reply at 2. However, the suspicions raised depend heavily on the context of the case and the surrounding facts. The question at this stage of the case is whether it is clear from the face of Plaintiffs' Complaint that the failure to pay the Notes raised an inference of misrepresentation or fraud as a matter of law by January 2008. The Court cannot so find.

Birkley is correct that the limitations period "does not await [plaintiff's] leisurely discovery of the full details of the alleged scheme." *Hupp v. Gray*, 500 F.2d 993, 996 (7th Cir. 1974) (quoting *Klein v. Bower*, 421 F.2d 338, 343 (2d Cir. 1970)). However, more is required than suspicious circumstances. *Fujisawa,* 115 F.3d at 1335.

"The facts constituting such notice must be sufficiently probative of fraud - sufficiently advanced beyond the stage of a mere suspicion, sufficiently confirmed or substantiated - not only to incite the victim to investigate but also to enable him to tie up any loose ends and complete the investigation in time to file a timely suit." *Id.*

Accepting Plaintiffs' facts as true, they were on notice that their investments were not performing as expected by late 2007, but it is not clear that they should have been on the alert for fraud, particularly in light of Birkley's alleged reassurances and the fact that when the original Notes could not be paid, he offered new Notes payable in December 2008.

Here, as alleged, the circumstances were not sufficiently probative of fraud by January 4, 2008, three years prior to the date of filing of this Complaint. Thus, the statue of limitations did not run and Plaintiffs' state securities fraud and other state law claims are timely.

### D. Notice under the Illinois Statute

However, there is another problem with Plaintiffs' claim under the Illinois Securities Act. The Act permits an injured purchaser of securities to recover "the full amount paid . . . less any income or other amounts received by the purchaser on such securities." 815 Ill. Comp. Stat. 5/13A. The statute requires that the purchaser give notice of an election of rescission within six months after the purchaser learns that the sale is voidable. 815 Ill. Comp. Stat.

5/13B. There is no dispute that Plaintiffs have not provided notice in this case. However, Plaintiffs contend that notice was not required because they are not seeking rescission of the Notes; rather, they are seeking payment of them. However, rescission is the only remedy available under the statute. *Reshal Assocs., Inc. v. Long Grove Trading Co.*, 754 F.Supp. 1226, 1236 (N.D. Ill. 1990). So Count II must be dismissed for failure to provide notice according to the statute. *See Kleban v. S.Y.S. Rest. Mgmt., Inc.*, 912 F.Supp. 361, 369 n. 3 (N.D. Ill. 1995).

**E.  Service**

Finally, Birkley argues that service upon him was improper because he was not served until September 6, 2011, nine months after the Complaint was filed. Under FED. R. CIV. P. 4(m), if a Defendant is not served within 120 days after the Complaint is filed, the Court must dismiss the action without prejudice or order that service be made within a specified time. However, if the plaintiff shows good cause, the court must extend the time for service. Birkley also cites Illinois Supreme Court Rule 103(b), which requires service to be completed in a timely manner, ostensibly because Plaintiffs have brought state-law causes of action. However, federal courts apply federal rules of procedure, even to state-law causes of action. *DeJesus v. Jeschke*, No. 02 C 1685, 2002 WL 1400532, at *2 (N.D. Ill. June 27, 2002). So the only relevant standard is Rule 4(m).

Typically, to constitute "good cause" for the extension of the service period under Rule 4(m), the plaintiff must show "a valid reason for delay, such as the defendant's evading service." *Coleman v. Milwaukee Bd. of Sch. Dirs.,* 290 F.3d 932, 934 (7th Cir. 2002)(citations omitted). Even if Plaintiffs fail to show good cause for their failure to accomplish timely service, the Court may has discretion to grant an extension of time for service. *United States v. Ligas,* 549 F.3d 497, 499 (7th Cir. 2008).

Plaintiffs' counsel has not submitted an affidavit explaining their attempts at service, nor does Plaintiffs' response provide much in the way of detail. The response indicates that Plaintiffs' counsel informed the Court at an initial status on April 4, 2011, that Defendants had not been served. However, the Court's records reflect that no hearing was held on that date.

At a status hearing on June 23, 2011, Plaintiffs' counsel explained to the Court the difficulties Plaintiffs were having trouble obtaining service, including that Chicago Investment Group had apparently merged with another entity and that Birkley had apparently gone to work for that entity. The merged company, according to Plaintiffs, failed to provide information about how to reach Birkley, so Plaintiffs had to hire an investigator.

Without more information, however, the Court cannot find good cause for Plaintiffs' failure to serve Birkley sooner, particularly given that he apparently was served at his home address. However, in

determining whether to grant a permissive extension, the Court may consider factors such as the statute of limitations bar, prejudice to the defendant, actual notice of the lawsuit, and eventual service. *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 383 (7th Cir. 1998). If the Court were to dismiss Plaintiffs' Complaint at this stage, the applicable statutes of repose would likely bar re-filing. This is a justification for providing relief, as is the fact that service was eventually effectuated. *See* FED. R. CIV. P. 4(m) advisory committee's note. As such, Birkley's Motion to Dismiss on the grounds of improper service is denied.

### III. CONCLUSION

For the reasons stated herein, Defendant Birkley's Motion to Dismiss is granted in part and denied in part. Count II of the Complaint, alleging a violation of the Illinois Securities Law, is dismissed. The remaining counts stand.

**IT IS SO ORDERED.**

                                        Harry D. Leinenweber, Judge
                                        United States District Court

**DATE:** 12/29/2011