IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GUY STONE, ANNA STONE, GAYL GORHAM, GARY STONE, JOYCE STONE, WENDY KASSEL, and THOMAS KASSEL, Individuals,<br><br>Plaintiffs,<br><br>v.<br><br>CHICAGO INVESTMENT GROUP, LLC, and ALAN BIRKLEY, an Individual,<br><br>Defendants. | Case No. 11 C 51<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

**I. BACKGROUND**

The Plaintiffs are holders of promissory notes issued by Western Springs, LLC ("Western Springs"), an affiliate of Dartmoor Homes, Inc. ("Dartmoor"). Defendant Alan Birkley ("Birkley") is an investment consultant, financial adviser and a licensed securities dealer. He was an employee and Vice President of Defendant Chicago Investment Group, LLC ("CIG"), which is no longer in business. Dartmoor was in the business of developing real estate and construction of high-end homes in the western suburbs, including Western Springs. Dartmoor raised capital for specific projects by the sale of limited partnership interests. In addition, Dartmoor from time to time raised capital by the occasional sale of promissory notes, which bore fixed income rates

and maturity dates. Dartmoor employed CIG and Birkley to obtain investors for its limited partnership interests and promissory notes for which it compensated CIG.

In 2006, Plaintiffs, Tom and Wendy Kassel (the "Kassels"), invested in one of the Dartmoor projects by purchasing limited partnership interests. This first phase was highly successful and the Kassels earned a 50% profit on their investments. In April 2006, Birkley met with the Kassels to discuss phase two of the Dartmoor project. As a result of these discussions, Birkley met with the Kassels and the other Plaintiffs who were also looking for investment opportunities. At this meeting, Birkley made a proposal that the Kassels roll over their investment in phase one into promissory notes in phase two and the other Plaintiffs invest money in return for promissory notes. The notes were to be eighteen (18) months in duration and carry interest at the rate of 15% per annum. Birkley assured the Plaintiffs that Dartmoor was solid and everything was going according to plan, that he personally had invested in phase one and was going to invest in phase two. As a result of this meeting with Birkley, the Plaintiffs decided to invest in phase two by purchasing the above described notes in various amounts. After the notes became due, Birkley kept promising that the notes would be paid. However, they were not paid. As a result of the notes not being paid, the Plaintiffs lost their investment as did Birkley.

Plaintiffs have filed a six-count Complaint alleging (1) Violation of SEC Rule 10b-5; (2) Violation of Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 5/1; (3) violation of Illinois Consumer Fraud and Deceptive Practices Act 815 ILCS 505; (4) Intentional Misrepresentation; (5) Negligent Misrepresentation; and (6) Breach of Fiduciary Duty. Birkley has moved to dismiss for lack of jurisdiction and, in the alternative, for summary judgment.

## II. **DISCUSSION**

### A. **Jurisdiction**

Since Birkley has raised the question of jurisdiction, it is necessary to make this determination initially. Since there is no diversity of citizenship, jurisdiction depends on whether the Plaintiffs have successfully invoked the SEC Rule 10(b)-5. The Plaintiffs contend that the promissory notes are securities pursuant to the Securities Act of 1933, thus securing jurisdiction in federal court. The Defendant argues otherwise. The key case is *Reyes v. Ernst & Young,* 494 U.S. 56 (1990). In *Reyes,* the issue was whether uncollateralized and uninsured promissory notes were securities. The Supreme Court adopted the so-called "family resemblance test" to determine whether an instrument was a security subject to the Act. The court started out by noting that the Act specifies that the term "security" includes notes so that presumptively notes are securities unless they fit within one of the catagorize of notes that it held were not securities or bore a

"family resemblance" to one of the exempt categories.  The notes in question in this case were not among the categories of notes that were specifically exempt.  The factors for family resemblance are (1) the motivation that prompted the investment, (2) the plan of distribution, *i.e.,* whether it was commonly traded, (3) the reasonable expectation of the public, and (4) whether there was some other regulatory scheme which would reduce the risk of the instrument.  While Birkley argues otherwise, it appears to the Court that the notes involved here were clearly securities.  First, and most important, they were clearly not among the exempt types.  Second, these notes were an alternative to the previous private placement offering and were presented to Plaintiffs as an investment.  Third, and most important, the Plaintiffs invested in the promissory notes in order to make a profit.  Clearly Birkley nas not rebutted the presumption that the promissory notes were, in fact, securities.

## B. Summary Judgment

Having disposed of the jurisdiction question, we now turn to the alternative Motion for Summary Judgment.  In order for a plaintiff to prove a claim under Rule 10b-5, he must prove that the defendant (1) made an untrue statement of material fact or omitted a material fact that rendered the statement misleading, (2) in connection with the purchase or sale of a security, (3) with the intent to mislead, (4) causing plaintiff's loss.  *Schlifke v.*

*Seafirst Corp.*, 866 F.2d 935, 943 (7th Cir. 1989). Many of the alleged false statements are said to have occurred after the Plaintiffs had purchased the promissory notes, thus negating any possible causal relationship to their losses. The remaining allegations are that Birkley represented that Dartmoor was sound and solid and that everything was going according to plan. He told Plaintiffs that he invested in both phase one and phase two and he assured them that their money was safe. He told them that "these people have a lot of money and they have a lot of development going." However, there is no evidence submitted by Plaintiffs that, at the time Birkley made these statements, that any of them were not true. Plaintiffs have not presented to the Court any financial documents that would show that, at the time of the sale, Birkley misrepresented the financial well being of Dartmoor. There is no evidence that Birkley himself did not make the investments in Dartmoor that he said he did. What the evidence does show is that the housing market went into steep decline around the time that Dartmoor defaulted. There is no evidence that Birkley did not believe that the investments were, in fact, safe when they were made. If he did not so believe, it is doubtful that he would have invested $400,000 of his own money. There is no evidence that he did not lose his money along with the Plaintiffs.

Accordingly, the Court finds that, while it has jurisdiction to hear this suit, Plaintiffs did not produce any evidence that any

statement made by Birkley was false when made or that he made a false statement knowingly. Summary judgment is entered on Count I. The Court declines to accept jurisdiction of the remaining state claims and dismisses Counts II, III, IV, V, and VI without prejudice.

### III. CONCLUSION

For the reasons stated herein, Defendant Alan Birkley's Motion for Summary Judgment on Count I is granted. All the remaining state law counts are dismissed without prejudice.

**IT IS SO ORDERED.**

                                        Harry D. Leinenweber, Judge
                                        United States District Court

Date:12/30/2013